IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUCIANO TRUJILLO,

    Plaintiff,

v.                                                         Case No. 13-cv-1178 MCA/SCY

ROBERT ROMERO and
ZACH GARCIA, in their individual
Capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Governor George Rivera's Motion to Quash Subpoenas and for Protective Order (*doc. 68*). Having reviewed Governor Rivera's Motion and Plaintiff Luciano Trujillo's response (*doc. 82*), and being fully advised, the Court finds that the Motion should be **DENIED**.

**I.    BACKGROUND**

On December 12, 2013, Plaintiff Luciano Trujillo filed a complaint against Defendants Robert Romero and Zach Garcia, two Pojoaque Tribal Police officers who were cross-deputized with the Santa Fe County Sheriff's Department. *See generally doc. 1*. According to Plaintiff, on March 21, 2011, he was driving his son's car in a reasonable and lawful manner when Defendants stopped him as part of a "set-up" that the political opponents of his son Carl Trujillo orchestrated. *Id.* ¶¶ 20, 37; *see also doc. 25*, first amended complaint; *doc. 82* at 5. Plaintiff alleges that Defendants violated his constitutional rights by detaining and arresting him on March 21, 2011 without cause and maliciously prosecuting him for driving under the influence

of alcohol, assault on a police officer, and resisting, evading or obstructing an officer. *Doc. 25* ¶¶ 25-35.

During the course of discovery, Plaintiff obtained information indicating that George Rivera, Governor of the Pueblo of Pojoaque, had knowledge of the March 21, 2011 stop. First, Defendants listed Governor Rivera as a potential witness who "may have knowledge of discoverable information about the events of March 21, 2011." *Doc. 82*, Ex. 2. Plaintiff then learned that Governor Rivera had called Defendant Romero at 7:01 p.m., shortly before the stop. *Doc. 82*, Ex. 3.[1] Plaintiff also discovered that the Pueblo of Pojoaque Police Department ran a license plate inquiry on the vehicle driven by Plaintiff at 7:13 p.m., allegedly before he was on the road. *Doc. 82*, Exs. 5-6. Based on this information, Plaintiff served two subpoenas on Verizon Wireless, Governor Rivera's cellphone carrier, seeking "any and all telephone bills and records of George Rivera, showing all calls and texts sent or received on March 21, 2011, from 6:30 PM MST through 9:30 PM MST." *Doc. 68*, Exs. A-B.

Upon learning of these subpoenas, Governor Rivera entered an appearance and moved to quash the subpoenas. *See doc. 68*. Governor Rivera argues that the subpoenas, which seek telephone records associated with a phone number belonging to the Pueblo of Pojoaque and used by Governor Rivera in his capacity as a tribal official, require the disclosure of information "that is immune from discovery under the concept of tribal sovereign immunity." *Id.* at 2. In the alternative, Governor Rivera asks the Court to enter a protective order, under Fed. R. Civ. P. 26(c), prohibiting the disclosure of his telephone records. *Id.* at 3.

---

[1] The unauthenticated phone records provided to the Court merely show a call between phone number 505-577-7649 (belonging to Stacey Romero) and 505-690-1314. However, Governor Rivera has not filed a reply contesting Plaintiff's assertion that this is a record of a call between Governor Rivera and Defendant Romero. For the purposes of this motion, the Court will accept this fact as true.

Three days after Governor Rivera filed this Motion, before the Court had an opportunity to rule on the matter, Verizon Wireless released the requested records to Plaintiff. *Doc. 82* at 8. Plaintiff's counsel informed Governor Rivera's attorney of this development and suggested that the Motion was now moot. However, it appears that Governor Rivera disagreed. According to Plaintiff's counsel, Governor Rivera's attorney told him that Governor Rivera still "wished to litigate the Motion to Quash." *Id.* Based on this representation, Plaintiff filed a response brief maintaining that the records subpoenaed from Verizon are not protected by sovereign immunity and opposing the Motion to Quash.

## II. SOVEREIGN IMMUNITY

The doctrine of tribal sovereign immunity protects federally recognized Indian tribes, such as the Pueblo of Pojoaque, from suit absent congressional or tribal authorization. *Kiowa Tribe v. Mfg. Techs.*, 523 U.S. 751, 754 (1998) ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."); *see also Bonnet v. Harvest (US) Holdings, Inc.*, 741 F.3d 1155, 1159 (10th Cir. 2014) (discussing the principles behind tribal sovereign immunity). Significantly, in sovereign immunity jurisprudence, the term "suit" encompasses a variety of compulsory judicial proceedings, including subpoenas duces tecum. Thus, as the Tenth Circuit recently explained "a subpoena duces tecum served directly on [a] Tribe, regardless of whether it is a party to the underlying legal action, is a 'suit' against the Tribe, triggering tribal sovereign immunity." *Bonnet*, 741 F.3d at 1160.

Governor Rivera attempts to extend this principle to quash a subpoena duces tecum served on a private corporation. But he does not cite any case law, and the Court is not aware of any case law, directly supporting the proposition that a subpoena served on a private company to

3

obtain records belonging to a tribal official is a suit against the tribe triggering tribal sovereign immunity. Moreover, circuit courts that have heard the issue reject this proposition. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) (holding that a discovery request for commercial bank records belonging to Argentina did not infringe on Argentina's sovereign immunity); *Miccosukee Tribe of Indians v. United States*, 698 F.3d 1326, 1330-1331 (11th Cir. 2012) ("summonses issued . . . to third-party financial institutions are not suits against [a] [t]ribe."). The Court finds these cases persuasive.

The general rule is that a court action implicates sovereign immunity if it "would expend itself on the public treasury or domain . . . interfere with the public administration, or . . . restrain the Government from acting, or to compel it to act." *Bonnet*, 741 F.3d at 1162 n.1 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)) (internal quotation marks omitted). Unlike a subpoena issued against a tribe, a subpoena directed to a commercial phone company does not burden a tribe in any of these ways. For instance, Governor Rivera does not argue that Verizon's compliance with the subpoenas caused the Pueblo of Pojoaque any expense. Similarly, the subpoenas on Verizon do not seek judgment against the Tribe or order the Tribe to take action. It follows that the subpoenas are not suits against the Tribe.

As best the Court can tell, the thrust of Governor Rivera's argument is that the Verizon subpoenas infringe on the Tribe's sovereignty because they require the production of information concerning the actions of the Tribe's Governor. This argument misunderstands the scope of sovereign immunity. Tribal sovereign immunity is not a blanket privilege protecting all information concerning tribal affairs. *See EM Ltd.*, 695 F.3d at 210 ("To the extent Argentina

expresses concern that the subpoenas will reveal sensitive information, it is asserting a claim of privilege and not a claim of [sovereign] immunity.").

To reiterate "the core notion of sovereign immunity" is that "in the absence of [tribal] consent, the courts lack jurisdiction to restrain the [tribe] from acting, or to compel it to act." *Bonnet*, 741 F.3d at 1159. While the Verizon subpoenas may have resulted in the disclosure of information the Tribe would prefer to keep private, the subpoenas have not forced the Tribe itself to reveal this information. Rather the subpoenas were directed against Verizon, a non-tribal entity with whom the Pueblo of Pojoaque voluntarily chose to conduct business. Verizon does not enjoy sovereign immunity and the Pueblo of Pojoaque cannot use its sovereign immunity to prevent Verizon from releasing records lawfully in its possession.

### III.    REQUEST FOR A RULE 26 PROTECTIVE ORDER

Under Fed. R. Civ. P. 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Governor Rivera contends that a protective order is warranted in this case because "the subpoenas seek the production of documents from the Governor of the Pueblo of Pojoaque . . . who is clearly immune from the powers of this Court." *Doc. 68* at 3. In other words, Governor Rivera's request for a Rule 26 protective order rests on the same grounds as his request that the Court quash the subpoena under Fed. R. Civ. P. 45. Governor Rivera does not argue that the subpoenas seek irrelevant information or sensitive information. Nor does Governor Rivera claim that the subpoenas were designed to embarrass or harass him. In the absence of any information indicating that this was the case, the Court will deny the Governor's request for a protective order for the same reasons it denied his assertion of sovereign immunity on behalf of the Pueblo of Pojoaque. If Governor Rivera is concerned about the confidentiality of the information

released by Verizon, he is free to file a motion explaining why he believes the information is confidential and asking for a protective order limiting the further disclosure of his phone records.

**IT IS SO ORDERED.**

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE