IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUCIANO TRUJILLO,

    Plaintiff,

v.                                                    Case No. 13-cv-1178 MCA/SCY

ROBERT ROMERO and
ZACH GARCIA, in their individual
Capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Governor George Rivera's Motion to Reconsider the Court's denial of his Motion to Quash (*doc. 93*). Having reviewed Governor Rivera's Motion, the accompanying briefing (*docs. 97, 103*), and being fully advised, the Court finds that the Motion should be **DENIED**.

**I.**     **PROCEDURAL BACKGROUND**

On December 12, 2013, Plaintiff Luciano Trujillo filed a complaint against Defendants Robert Romero and Zach Garcia, two Pojoaque Tribal Police officers who were cross-deputized with the Santa Fe County Sheriff's Department. *See generally doc. 1.* According to Plaintiff, on March 21, 2011, he was driving his son's car in a reasonable and lawful manner when Defendants stopped him as part of a politically motivated "set-up." *Id.* ¶¶ 20, 37; *see also doc. 25*, first amended complaint; *doc.* 82 at 5. During the course of discovery, Plaintiff obtained information suggesting that George Rivera, Governor of the Pueblo of Pojoaque,[1] had knowledge of this "set-up." Based on this information, Plaintiff served two subpoenas on Verizon Wireless,

---

[1] Although the Pueblo of Pojoaque has recently elected a new governor (*doc. 103* at 1), the Court will, for ease of reference, continue to refer to George Rivera as Governor or Governor Rivera.

Governor Rivera's cellphone carrier, seeking the Governor's phone records for the night of the incident. *Doc. 68*, Exs. A-B.

Upon learning of these subpoenas, Governor Rivera entered an appearance and moved to quash them. *See doc. 68*. Governor Rivera argued that the subpoenas improperly required the disclosure of information "immune from discovery under the concept of tribal sovereign immunity." *Id.* at 2. In the alternative, Governor Rivera asked the Court to enter a protective order, under Fed. R. Civ. P. 26(c), prohibiting the disclosure of his telephone records. *Id.* at 3. Governor Rivera represented that the phone records sought by Plaintiff were associated with a phone number belonging to the Pueblo of Pojoaque and used by Governor Rivera in his capacity as a tribal official. *Id.* at 2.

Three days after Governor Rivera filed this Motion, before the Court had an opportunity to rule on the matter, Verizon Wireless released the requested records to Plaintiff. *Doc. 82* at 8. Plaintiff's counsel informed Governor Rivera's attorney of this development and suggested that the Motion to Quash was moot. Because Governor Rivera disagreed, Plaintiff filed a response in opposition to the Motion to Quash. *Id.* Governor Rivera, however, did not file a reply brief. After considering the Motion and Response, the Court determined that sovereign immunity did not bar the enforcement of the subpoenas. *See generally doc. 91*. Furthermore, the Court denied the Governor's request for a protective order because he had not made any arguments (other than his argument regarding sovereign immunity) in support of this request. *Id.* at 5-6. The Court specifically noted that Governor Rivera was "free to file a motion explaining why he believes [his phone records are] confidential and asking for a protective order limiting the <u>further</u> disclosure of [these] records." *Id.* at 6 (emphasis added).

2

Governor Rivera is now asking the Court to reconsider its denial of his assertion of sovereign immunity. In addition, Governor Rivera claims, for the first time, that his phone records should be protected under both the executive and deliberative process privileges. *See generally doc. 93*.

## II.     STANDARD OF REVIEW

Governor Rivera styles his Motion to Reconsider as both a motion seeking relief from a judgment under Fed. R. Civ. P. 60(b) and as a motion to revise an interim order under Fed. R. Civ. P. 54(b). These rules are mutually exclusive, as Rule 60(b) "only applies to final orders or judgments." *Raytheon Constructors v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003). Here, the Governor, a non-party, repeatedly claims that the order denying his motion to quash is non-final. *Doc. 93* at 3; *doc. 103* at 2. Because Plaintiff does not dispute this characterization, the Court will analyze the Governor's motion under the more lenient standards of Rule 54(b), assuming, without deciding, that the denial of the motion to quash is not final.

The standards for reviewing a Rule 54(b) motion for reconsideration are basically the same as the standards for reviewing a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013) (unpublished); *see also Pia v. Supernova Media*, Inc., No 2:09-cv-00840, 2014 U.S. Dist. LEXIS 175028 (D. Utah Dec. 18, 2014) (unpublished). Under these rules, a court may grant a motion for reconsideration in three circumstances: when there is "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Res.Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). A motion to reconsider is not an opportunity "to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). In other words, a

3

motion to reconsider should do more than simply restate the position that was unsuccessfully advanced by the party in the initial motion, and should not advance new arguments that could have been raised in the initial motion.

### III. DISCUSSION

#### a. Sovereign Immunity

Governor Rivera maintains that tribal sovereign immunity bars Plaintiff from issuing subpoenas to Verizon Wireless for the Governor's phone records. *Doc. 93* at 4. To support this position, Governor Rivera reasserts the same arguments he made in his Motion to Quash: that sovereign immunity protects his phone records because he is a tribal official and because the information contained in these records is related to the official duties of Governor Rivera as Governor of the Pueblo. The Court has already considered and rejected this position. While Governor Rivera disagrees with the Court's reasoning, he has not identified any on-point authority, or other persuasive authority, which this Court overlooked, to support his claim that sovereign immunity shields a tribal official's phone records (or other records) from discovery even when the party seeking these records is able to obtain them from a private corporation rather than the tribe. This is sufficient reason alone to reject Governor Rivera's motion to reconsider. *See Christy*, 739 F.3d at 539 (a motion to reconsider is not a vehicle for revisiting arguments and case law that the Court has already considered).[2]

---

[2] Governor Rivera argues that this standard does not apply to a motion to reconsider involving sovereign immunity. *Doc. 103* at 3. The Governor is correct that sovereign immunity is unusual; like subject-matter jurisdiction, it can be raised throughout the case and is exempt from the normal principles of waiver. *See Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 318 (10th Cir. 1982). This does not mean, however, that a tribe has a carte blanche to force the court and opposing party to repeatedly revisit the same arguments that the tribe has already unsuccessfully asserted in favor of sovereign immunity. Thus, while the Governor is not procedurally barred from asking the Court to reevaluate the issue of sovereign immunity, the Governor is required to present new case law or arguments in support of this motion detailing why the Court's previous analysis was in error. This, the Governor has failed to do.

Moreover, even if the Court were considering the Governor's motion for the first time, it would still conclude that tribal sovereign immunity does not extend to subpoenas issued to third-party private enterprises. As previously discussed in the Court's first decision, the doctrine of tribal sovereign immunity protects <u>federally recognized Indian tribes</u> from compulsory judicial proceedings, such as responding to subpoenas. *Kiowa Tribe v. Mfg. Techs.*, 523 U.S. 751, 754 (1998); *Bonnet v. Harvest (US) Holdings, Inc.*, 741 F.3d 1155, 1160 (10th Cir. 2014). This rule is an application of the core principle that, without government consent, "courts lack jurisdiction to restrain the government from acting, or to compel it to act." *Bonnet*, 741 F.3d at 1159. When there is a dispute about whether a particular judicial proceeding implicates sovereign immunity, the Supreme Court has directed courts to consider three factors: (1) does the proceeding expend itself on the public treasury or domain, (2) does it interfere with public administration, or (3) does it otherwise compel the government to act or refrain from acting. *Id.* at 1162 n. 1 (citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). The presence of any one of these three factors is enough to trigger sovereign immunity. *Id.* Conversely, in the absence of these factors, sovereign immunity does not come into play.

In this case, all three factors are absent. First, and most significantly, the subpoenas for the Governor's phone records were not directed to the Tribe or any of its officials. Thus, the subpoenas did not mandate that the Tribe act or cease to act.[3] Second, Verizon's compliance with the subpoenas did not expend itself on the tribal treasury. Any decision by the Tribe to challenge these subpoenas was purely voluntary. Tribal sovereign immunity is not implicated simply because a tribe inserts itself into a court proceeding to challenge a decision that the tribe

---

[3] The Governor maintains that enforcing these subpoenas will "restrain activities of Pueblo officials who may now be fearful of using Pueblo issued cell phones to conduct work." *Doc. 93* at 5. In addition to being speculative, this argument confuses influence with obligation. Sovereign immunity shields tribes from court-ordered obligations; it does not prevent courts from imposing obligations on non-tribal entities with whom a tribe chooses to do business -- even when the obligation imposed on the non-tribal entity influences the tribe.

disfavors. Finally, the Governor has not identified a definite and direct way in which the subpoenas threaten to interfere with the public administration of the Tribe. The Governor argues that the subpoenas obstruct tribal autonomy because they will "likely be followed by depositions of the Governor." *Doc. 93* at 5. Whether Plaintiff will seek to depose Governor Rivera remains to be seen. The legality of the subpoenas issued to Verizon Wireless, however, is a separate and distinct issue from whether Plaintiff may depose Governor Rivera. Allowing the subpoenas to stand in no way vitiates the Tribe's right to assert sovereign immunity to bar the potential deposition of Governor Rivera. If such a deposition is noticed, the Court will consider objections to it at that time.

The above analysis is consistent with the approach to this issue taken by the Second Circuit and the Eleventh Circuit. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) (holding that a discovery request for commercial bank records belonging to Argentina did not infringe on Argentina's sovereign immunity); *Miccosukee Tribe of Indians v. United States*, 698 F.3d 1326, 1330-1331 (11th Cir. 2012) ("summonses issued . . . to third-party financial institutions are not suits against [a] [t]ribe."). As the Governor emphasizes, these cases are not binding.  But they are, as the Court reasoned in its first decision, both germane and persuasive. The Governor's attempts to distinguish *EM Ltd.* and *Miccosukee* as not "on point" are sophistry.

In *EM Ltd.*, the Second Circuit considered a challenge to two subpoenas issued to two non-party banks that sought Argentina's commercial bank records. The Court rejected this challenge for two independent reasons. The Court first reasoned that sovereign immunity did not bar the enforcement of these subpoenas because Argentina had expressly waived sovereign immunity in regards to the underlying lawsuit. *EM Ltd.*, 695 F.3d at 209. The Court then went on

to provide a "second principal reason" for upholding the subpoenas: the subpoenas were directed at commercial banks, which did not enjoy sovereign immunity. *Id.* at 210. The Court explained that the banks' compliance with subpoenas would not impose any burden or expense on Argentina and that the doctrine of sovereign immunity does not shield sensitive government information from court inspection when this information is in the possession of third-parties. *Id.* Despite this clear statement of law, in his Reply brief, Governor Rivera attempts to distinguish *EM Ltd.* by referring only to the first reason provided for the ruling: that Argentina waived sovereign immunity. *Doc. 103* at 4. Governor Rivera correctly notes that this portion of *EM Ltd.* is not applicable to the present analysis. The Court, however, did not rely on this portion of *EM Ltd.* Instead, the Court relied on *EM Ltd.'s* alternative holding that sovereign immunity does not protect government bank records from discovery. Governor Rivera's refusal to acknowledge or address *EM Ltd*.'s alternative holding does not make it simply vanish.

Governor Rivera's attempts to discount *Miccosukee* are unfounded for similar reasons. He claims that "*Miccosukee* is distinguishable because in that case, the U.S. issued the subpoena." *Doc. 93* at 4. Again, however, Governor Rivera has cited one basis for the court's holding while ignoring the other, relevant, basis. In *Miccosukee*, the Eleventh Circuit identified two distinct reasons the Tribe could not use sovereign immunity to quash subpoenas issued to financial institutions for the Tribe's bank records: (1) "summonses issued . . . to third-party financial institutions are not suits against the Tribe" and (2) the United States had the power to enforce the summonses as the greater sovereign. This first basis, which Governor Rivera chooses to ignore, is the one on which this Court relied and the one which undermines Governor Rivera's argument.

Governor Rivera further contends that *Miccosukee* is inapposite because the Eleventh Circuit applied a different test than the Tenth Circuit applies to decide whether sovereign immunity barred a judicial proceeding. *Doc. 103* at 4-5. This is incorrect. The Eleventh Circuit based its decision on the Supreme Court general rule that, "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Miccosukee*, 698 F.3d at 1330 (quoting *Dugan*, 372 U.S. at 620). The Tenth Circuit has both acknowledged and applied this test. *Bonnet*, 741 F.3d at 1159-1160, 1162 n.1 (quoting *Dugan* and holding that a subpoena is a lawsuit for the purposes of sovereign immunity because it compels the government to act). Furthermore, Governor Rivera's argument contradicts his own acknowledgment that Tenth Circuit precedent requires this Court to consider the Supreme Court's three-factor test in deciding whether sovereign immunity bars the subpoenas at issue in this case. *Compare Doc.* 103 at 4 (claiming that the Tenth Circuit applies a "different test" than the Eleventh Circuit) *with Doc. 93* at 4 ("This Court should have focused on the three characteristics outlined in *Bonnet* that would make the subpoena a suit against a sovereign. *See Bonnet*, 741 F.3d at 1162 n.1 citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)."). Thus, the Governor cannot successfully argue that the Tenth Circuit applies a different test than the Eleventh Circuit. The fact of the matter is that the Second and Eleventh Circuit Courts of Appeals have directly held that issuing a subpoena to a private company for government records does not trigger sovereign immunity.

Despite these cases, Governor Rivera persists in arguing that the subpoenas issued to Verizon Wireless should be quashed as impermissible attempts to circumvent the Tribe's sovereign immunity. Governor Rivera cites two new cases in his Reply brief to bolster this

argument: *Trujillo v. Bd. of Educ.*, Nos. 02-cv-1146, 03-cv-1185, 2007 U.S. Dist. LEXIS 56561 (D.N.M. June 26, 2007) and *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002). Neither is helpful. *Trujillo* involves the standard for evaluating whether an individual has standing to challenge a subpoena issued to a third-party. Here, no one is disputing that Governor Rivera has standing to challenge the release of his phone records; instead, the issue is whether the law warrants a ruling in his favor on the merits. *Catskill* is unhelpful because the Court explicitly avoided the issue of sovereign immunity. *Catskill*, 206 F.R.D. at 93 ("Without reaching the issue of whether Key Bank shares the Tribe's sovereign immunity . . ."). Governor Rivera does not cite, and this Court is not aware of, any other case law that would support his position that sovereign immunity extends protections to tribal records possessed by private companies.

  Rather, the Governor primarily relies on his own unsubstantiated characterization of Verizon Wireless as the Tribe's records custodian or agent. *Doc. 93* at 6, 7. Because the Governor has not identified any facts supporting this characterization, the Court accords it little weight. For instance, the Governor has not identified any law or contractual provisions indicating that Verizon Wireless did not have an independent right to possess and maintain phone records of Governor Rivera's calls, which Verizon Wireless presumably created using its own network. Nor has the Governor provided any indication that Verizon Wireless lacked the authority to disclose or otherwise use these phone records without his consent. In the absence of such evidence, the Court will not entertain the Governor's argument that sovereign immunity should be extended to Verizon Wireless as an arm of the Tribe. For all of the above reasons, the Court will deny Governor Rivera's motion to reconsider the denial of his assertion of sovereign immunity.

### b. Plaintiff's Alleged Misconduct

In addition to asking the Court to reconsider its prior ruling regarding sovereign immunity, Governor Rivera flags several new issues, including Plaintiff's wrongful disclosure of the Governor's phone records to counsel for Santa Fe County and counsel for the Department of Justice. As the Governor points out, this disclosure was forbidden by Fed. R. Civ. P. 45(e)(2)(B), because it occurred while the Motion to Quash was pending. Because the Governor did not raise this issue earlier and does not specifically request sanctions based on this misconduct, the Court will simply note the issue and remind Plaintiff's counsel of their obligation to abide by the limitations of Rule 45 going forward.

### c. Executive and Deliberative Process Privileges

The final issue Governor Rivera raises is the applicability of the executive and deliberative process privileges to the phone records. It is undisputed that the Governor did not timely assert either of these privileges in his Motion to Quash. The Court will, therefore, decline to consider either as a basis for quashing the subpoenas. *Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010) (declining to consider argument raised for first time in motion to reconsider). It is not equitable or efficient to allow the Governor repeated attempts to marshal new arguments in support of his motion to quash the subpoenas issued to Verizon. Nothing in the Court's prior order suggested otherwise. There, the Court denied the Governor's motion for a protective order on the basis of sovereign immunity, but noted that the Governor could file a motion asking for a protective order limiting "the further disclosure of his phone records." *Doc. 91* at 6. In extending this invitation, the Court signaled its inclination to restrict Plaintiff, and the other recipients of the phone records, from sharing these records with outside parties. This invitation did not open

the door for the Governor to present brand new arguments as to why the challenged subpoena should be quashed.

**IT IS THEREFORE ORDERED** that Governor George Rivera's Motion to Reconsider the Court's denial of his Motion to Quash (*Doc. 93*) is **DENIED**.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE