# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LUCIANO TRUJILLO,

     Plaintiff,

     v.                                       No. 13-CV-1178 MCA-SCY

ROBERT ROMERO, ZACH GARCIA,
and THE UNITED STATES OF AMERICA,

     Defendants/Third-Party Plaintiffs,

     v.

THE COUNTY OF SANTA FE,

     Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the County of Santa Fe's (County) *Motion to Dismiss Third-Party Complaint* [Doc. 21] and *Motion to Certify Question to Supreme Court of New Mexico* [Doc. 27]. Having considered the parties' submissions, the relevant case law, and otherwise being fully advised in the premises, the Court will grant the County's motion to dismiss and deny the County's motion to certify.

## I.    BACKGROUND

Defendants Robert Romero and Zach Garcia admit and/or allege the following relevant facts. On March 21, 2013, Defendants Romero and Garcia, police officers

1

employed by the Pueblo of Pojoaque, stopped a vehicle driven by Plaintiff Luciano
Trujillo, a non-Indian.  At the time of the traffic stop, Defendants Romero and Garcia
were "duly deputized to serve as Deputy Sheriffs of Santa Fe County, New Mexico" and
were "duly issued Santa Fe County Sheriff's Department Commission cards."  [Doc. 40
at 27]  As a result of the traffic stop, Plaintiff was arrested and charged with violations of
Pojoaque tribal law (specifically, driving while under the influence (DWI) and interfering
with an officer) in Pueblo of Pojoaque Tribal Court.  [Doc. 40 at 27]  The Tribal Court
charges were rejected, however, because of Plaintiff's non-Indian status.  [Doc. 40 at 28]

On or about March 28, 2011, the original Pueblo of Pojoaque criminal complaint,
a new DWI citation signed by Defendant Romero, and other relevant documents and
videos were forwarded to the Office of the District Attorney, First Judicial District.
[Doc. 40 at 28]  "On or about July 12, 2012, the Santa Fe County District Attorney filed
the DWI charge [against Plaintiff] and filed additional state law criminal charges of
assault on a police officer, resisting or obstructing an officer charged under NMSA §§
30-22-21(A)(1) and (2) and 30-22-1, all of which charges were originally referenced in
Individual Defendant Romero's March 28, 2011 transmittal to the District Attorney's
Office."  [Doc. 40 at 29]  The state charges against Plaintiff were eventually dismissed.
[Doc. 25 at 16-17; Doc. 40 at 17-18]

On December 12, 2013, Plaintiff filed a *Complaint for Damages* [Doc. 1],
followed by an *Amended Complaint for Damages* against Defendants Romero, Garcia,
and the United States of America.  [Doc. 25]  Plaintiff's *Amended Complaint* alleges that
Defendants: (1) violated 42 U.S.C. § 1983 because "the arrest, the force used to effect the

arrest and the filing of the criminal charges [against Plaintiff] in state court were undertaken by Defendants Romero and Garcia under color of state law"; [Doc. 25 at 18] and (2) violated the Federal Tort Claims Act because "at the time Defendants Romero and Garcia detained [Plaintiff] without reasonable suspicion, arrested him without probable cause, otherwise subjected him to an unreasonable seizure, and subjected him to false imprisonment, false arrest and a battery they were acting within the course and scope of their employment and under color of federal law as federal employees pursuant to the authority they had received under the contract(s) between the Pojoaque Pueblo and the United States Bureau of the Interior, an agency of Defendant United States of America." [Doc. 25 at 20]

Defendants Romero and Garcia filed an *Amended Third-Party Complaint* against the County of Santa Fe (the County) seeking a declaratory judgment that the County "is required to defend, indemnify and represent" Defendants Romero and Garcia under the New Mexico Tort Claims Act, NMSA 1978, § 41-1-1, *et. seq.*, "to the extent that it is alleged (as to indemnity) or the Court finds (as to liability) that any of their actions at issue in this case were undertaken in their capacities as Santa Fe County Sheriff's Deputies." [Doc. 40 at 32] The County has moved to dismiss the *Amended Third-Party Complaint* pursuant to Fed. R. Civ. P. 12(b)(6), alleging that "Defendants are not 'public employees' within the definitions of the New Mexico Tort Claims Act, and the County

therefore has not waived its sovereign immunity related to defense and indemnification."[1]

[Doc. 21 at 1]

On March 10, 2014, the County also filed the present *Motion to Certify Question to Supreme Court of New Mexico*.  [Doc. 27]  The County seeks to certify the following question to the New Mexico Supreme Court:

> Does the New Mexico Tort Claims Act require a
> governmental entity to provide a defense and/or
> indemnification to a tribal police officer who is employed by
> a sovereign Indian Nation and on duty as a tribal police
> officer, when he or she acts under color of state law against a
> non-Indian person who is within the exterior boundaries of
> the Indian Nation, pursuant to the officer's commission as a
> Deputy Sheriff duly issued by the governmental entity, and
> allegedly commits torts and/or violations of 42 U.S.C. §
> 1983?

[Doc. 27 at 1]  Plaintiff opposes the County's motion for certification, alleging that the foregoing question does not pose a novel or unsettled area of state law in light of the New Mexico Court of Appeals' recent decision in Loya v. Gutierrez, 319 P.3d 656 (2013), *cert. granted*, 322 P.3d 1063 (N.M. Feb. 7, 2014).

On January 21, 2015, the United States of America was substituted as a party for Defendants Romero and Garcia with respect to Plaintiff's Federal Tort Claims Act claim. [Doc. 105]  However, the United States was "not substituted for Defendants Robert Romero and Zach Garcia for any alleged deprivation of civil rights under 42 U.S.C. § 1983."  [Doc. 105 at 4]  On February 11, 2015, the parties filed a *Rule 41(a)(1)(A)(i)*

---

[1] The County initially moved to dismiss the original complaint, but the parties have stipulated and agreed that "the County's pending Motion to Dismiss Third-Party Complaint (Doc. 21), filed on March 3, 2014, and the Response in Opposition to the Motion to Dismiss Third Party Complaint, filed by the Defendants on May 16, 2014 (Doc. 54), shall apply in their entirety to the Amended Third-Party Complaint (Doc. 40, pp. 26-32, ¶¶ 1-32), as will the County's future Reply."  [Doc. 60]

*Notice of Dismissal of the Federal Tort Claim and Defendant United States of America*

[Doc. 110].  Therefore, only the § 1983 claims against Defendants Romero and Garcia

remain pending.

**II.**     **STANDARDS**

*A.*     *Motion to Certify*

Pursuant to New Mexico Rule of Appellate Procedure 12-607(A), the New

Mexico Supreme Court has the power to:

> answer by formal written opinion questions certified to it by a
> court of the United States . . . if the answer may be
> determinative of an issue in pending litigation in the
> certifying court and the question is one for which answer is
> not provided by a controlling:
>
> (a)     appellate opinion of the New Mexico Supreme Court
> or the New Mexico Court of Appeals; or
>
> (b)     constitutional provision or statute of this state.

§ 39-7-4(1); see also NMSA 1978, § 39-7-4 ("The supreme court of this state may answer

a question of law certified to it by a court of the United States . . . if the answer may be

determinative of an issue in pending litigation in the certifying court and there is no

controlling appellate decision, constitutional provision or statute of this state.").

"Certification 'allows a federal court faced with a novel state-law question to put

the question directly to the State's highest court,' and has the advantages of 'reducing the

delay, cutting the costs, and increasing the assurance of gaining an authoritative response'

from the state court."  Kansas Judicial Review v. Stout, 519 F.3d 1107, 1119 (10th Cir.

2008) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997)).

However, "[c]ertification is not to be routinely invoked whenever a federal court is

presented with an unsettled question of state law."  Id. (quoting Armijo v. Ex Cam, Inc.,

843 F.2d 406, 407 (10th Cir. 1988)).  Indeed, the Supreme Court has instructed that:

> In the absence of some recognized public policy or defined
> principle guiding the exercise of the jurisdiction conferred,
> which would in exceptional cases warrant its non-exercise, it
> has from the first been deemed to be the duty of the federal
> courts, if their jurisdiction is properly invoked, to decide
> questions of state law whenever necessary to the rendition of
> a judgment.

Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943).  Thus, "only questions of

state law that are both unsettled and dispositive" should be certified.  Kansas Judicial

Review, 519 F.3d at 1119 (internal quotation marks and citation omitted).  "The decision

to certify 'rests in the sound discretion of the federal court . . . .'"  Id. at 1120 (quoting

Lehman Bros v. Schein, 416 U.S. 386, 391 (1974)).

B.      *Motion to Dismiss*

        A court will dismiss a complaint for "failure to state a claim upon which relief can

be granted."  Fed. R. Civ. P. 12(b)(6).  For decades, Rule 12(b)(6) motions were

governed by a test taken from Conley v. Gibson, 355 U.S. 41, 45-46 (1957):  a complaint

was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."  Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011)

(quoting Conley, 355 U.S. at 45-46) (internal quotation marks omitted).  In Bell Atlantic

Corporation v. Twombly, 550 U.S. 544, 570 (2007), the Court retired Conley's test,

replacing it with a new standard:  "to withstand a motion to dismiss, a complaint must

have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible

6

on its face.'"  Collins, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 570)).  In

applying this standard, a court accepts as true all "plausible, non-conclusory, and non-

speculative" facts alleged in the plaintiff's complaint.  Shrader v. Biddinger, 633 F.3d

1235, 1239 (10th Cir. 2001) (internal quotation marks and citation omitted).  However,

"the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Moreover, "'a formulaic recitation of the elements of a cause of action' will not suffice; a

plaintiff must offer specific factual allegations to support each claim" that "raise a right to

relief above the speculative level.'"  Collins, 656 F.3d at 1214 (quoting Twombly, 550

U.S. at 555).  In short, in ruling on a 12(b)(6) motion, "a court should disregard all

conclusory statements of law and consider whether the remaining specific factual

allegations, if assumed to be true, plausibly suggest the defendant is liable."  Collins, 656

F.3d at 1214.

## III.   DISCUSSION

### A.   Motion to Certify

To determine whether the defense or indemnification of cross-commissioned tribal

police officers poses a novel or unsettled area of state law, the Court first turns to the

relevant provisions of the New Mexico Tort Claims Act (the Act).  NMSA 1978, § 41-4-

4(A) generally grants immunity to "any public employee while acting within the scope of

duty" and requires the "governmental entity" to defend "any public employee when

liability is sought for":

7

(1) any tort alleged to have been committed by the public employee while acting within the scope of his duty; or

(2) any violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico when alleged to have been committed by the public employee while acting within the scope of his duty.

NMSA 1978, § 41-4-4(B).  The term "governmental entity" means "the state or any local public body," which includes "all political subdivisions of the state and their agencies, instrumentalities, and institutions and all water and natural gas associations organized pursuant to Chapter 3, Article 28 NMSA 1978."  NMSA 1978, § 41-4-3(B), (C).  The term "public employee" is defined as follows:

"public employee" means an officer, employee or servant of a governmental entity, excluding independent contractors except for individuals defined in Paragraphs (7), (8), (10), (14) and (17) of this subsection, or of a corporation organized pursuant to the Educational Assistance Act, the Small Business Investment Act or the Mortgage Finance Authority Act or a licensed health care provider, who has no medical liability insurance, providing voluntary services as defined in Paragraph (16) of this subsection and including:

(1) elected or appointed officials;

(2) law enforcement officers;

(3) persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation;

(4) licensed foster parents providing care for children in the custody of the human services department, corrections department or department of health, but not including foster parents certified by a licensed child placement agency;

(5) members of state or local selection panels established pursuant to the Adult Community Corrections Act;

8

(6) members of state or local selection panels established pursuant to the Juvenile Community Corrections Act;

(7) licensed medical, psychological or dental arts practitioners providing services to the corrections department pursuant to contract;

(8) members of the board of directors of the New Mexico medical insurance pool;

(9) individuals who are members of medical review boards, committees or panels established by the educational retirement board or the retirement board of the public employees retirement association;

(10) licensed medical, psychological or dental arts practitioners providing services to the children, youth and families department pursuant to contract;

(11) members of the board of directors of the New Mexico educational assistance foundation;

(12) members of the board of directors of the New Mexico student loan guarantee corporation;

(13) members of the New Mexico mortgage finance authority;

(14) volunteers, employees and board members of court-appointed special advocate programs;

(15) members of the board of directors of the small business investment corporation;

(16) health care providers licensed in New Mexico who render voluntary health care services without compensation in accordance with rules promulgated by the secretary of health. The rules shall include requirements for the types of locations at which the services are rendered, the allowed scope of practice and measures to ensure quality of care;

(17) an individual while participating in the state's adaptive driving program and only while using a special-use state vehicle for evaluation and training purposes in that program; and

>(18) the staff and members of the board of directors of the
>New Mexico health insurance exchange established pursuant
>to the New Mexico Health Insurance Exchange Act;

NMSA 1978, § 41-4-3(F).

The term "law enforcement officers" is defined as follows:

>A full-time salaried public employee of a governmental
>entity, or a certified part-time salaried police officer
>employed by a governmental entity, whose principal duties
>under law are to hold in custody any person accused of a
>criminal offense, to maintain public order or to make arrests
>for crimes, or members of the national guard when called to
>active duty by the governor.

NMSA 1978, § 41-4-3(D).  However, the immunity granted by the Act does not apply to

liability for:

>personal injury, bodily injury, wrongful death or property
>damage resulting from assault, battery, false imprisonment,
>false arrest, malicious prosecution, abuse of process, libel,
>slander, defamation of character, violation of property rights
>or deprivation of any rights, privileges or immunities secured
>by the constitution and laws of the United States or New
>Mexico when caused by law enforcement officers while
>acting within the scope of their duties.

NMSA 1978, § 41-4-12.

It is undisputed that Defendants Romero and Garcia are not "law enforcement

officers" as defined by the Act because they are not salaried officers employed by the

County.  Nonetheless, Defendants Romero and Garcia argue that they are "public

employees" pursuant to § 41-4-3(F)(3), which applies to "persons acting on behalf or in

service of a governmental entity in any official capacity, whether with or without

compensation."  § 41-4-3(F)(3).  [Doc. 54 at 6-9]  In Loya v. Gutierrez, the New Mexico

Court of Appeals considered whether a police officer employed by the Pueblo of

Pojoaque, who was exercising his authority as a commissioned sheriff's deputy of the

County of Santa Fe, was a "public employee" entitled to defense and indemnification by

the County under the Act.  In that case, as in the present case, the officer was "performing

traditional law enforcement duties" at the time the alleged § 1983 violations occurred, but

nonetheless, the officer did "not meet Section 41-4-3(D)'s definition of a 'law

enforcement officer.'"  319 P.3d at 660.  Also in that case, as in the present case, the

officer argued that he was a "public employee" pursuant to § 41-4-3(F)(3), because he

was "acting on behalf or in service of a governmental entity in any official capacity,

whether with or without compensation."  § 41-4-3(F)(3).  The New Mexico Court of

Appeals rejected the officer's argument because:

> Accepting Officer Gutierrez's interpretation of Section 41-
> 43(F)(3) would require us to expand the definition of "public
> employee" to include law enforcement officers acting within
> the scope of their police duties but who are not salaried
> employees of a governmental entity subject to the TCA.  See
> § 41-4-3(D).  In essence, Officer Gutierrez is asking this
> Court to create two classes of law enforcement officers within
> the TCA's definitional section of "public employee"—one
> that is salaried and works for a governmental entity and one
> that is not.  We decline to do so for several reasons.  First,
> such an interpretation would go beyond the plain language of
> Section 41-4-3(F)(3).  That section makes no mention of
> providing an alternate or different definition of "public
> employee" to include those persons exercising state law
> enforcement powers but who are not salaried employees of a
> governmental entity."  See id.  Second, reading the statute to
> say that a police officer who fails to meet the definition of a
> "law enforcement officer" under Section 41-4-3(D) can then
> allege that his same conduct falls within another definition in
> order to trigger the duty to defend and indemnify is an
> illogical distinction that makes no sense.  See Ramirez v. IBP
> Prepared Foods, 2001-NMCA-036, ¶ 16, 130 N.M. 559, 28
> P.3d 1100 (stating that '[i]n interpreting a statute, we look to

11

the statue as a whole [and] . . . attempt to achieve internal consistency' (citation omitted)), superseded by statute on other grounds as stated in Baca v. Los Lunas Cmty. Programs, 2011-NMCA-008, 149 N.M. 198, 246 P.3d 1070. In other words, Officer Gutierrez cannot claim that he was acting in his capacity as a law enforcement officer yet disclaim that he must fit within the TCA's definition for conduct involving a law enforcement officer. Finally, if the New Mexico Legislature had intended to protect commissioned tribal officers discharging their duties under state law, it could readily have demonstrated such an intent by including language to that effect. See Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 49, 276 P.3d 252 (noting that if the Legislature wanted to condition the applicability of a payment scheme on the dispensing of the lesser expensive, therapeutic equivalent drug, it would have included those terms within the statute), cert. granted, 2012-NMCERT-003, 293 P.3d 184. Indeed, our Legislature recently amended the TCA to include "certified part-time salaried police officer[s] employed by a governmental entity" within the definition of "law enforcement officer." Section 41-4-3(D). Thus, the Legislature could have—but did not— include non-salaried commissioned officers working on behalf or in the service of a governmental entity subject to the TCA.

Loya, 319 P.3d at 661. The New Mexico Supreme Court granted certiorari to review the decision of the Court of Appeals. Loya v. Gutierrez, 322 P.3d 1063 (N.M. 2014). The case is fully briefed and was submitted to the Court on August 27, 2014.

In light of the Court of Appeals' opinion in Loya, the Court concludes that the question of law that the County seeks to certify to the New Mexico Supreme Court is neither novel nor unsettled. A district court should "not trouble our sister state courts every time an arguably unsettled question of state law comes across [its] desk[]." Pino v. United States, 507 F.3d 1233, 1236 (10th Cir. 2007); see Armijo, 843 F.2d at 407 ("Certification is not to be routinely invoked whenever a federal court is presented with

an unsettled question of state law.").  If the district court can "see a reasonably clear and

principled course, [it should] seek to follow it [itself]."  Id.  Because the question of law

that the County seeks to certify can be answered by reference to an appellate opinion of

the New Mexico Court of Appeals, the County's *Motion to Certify Question to Supreme*

*Court of New Mexico* [Doc. 27] will be denied.  See Segura v. Colombe, No. 11-926

MV/WDS, Doc. 46 at 17 (D. N.M. September 24, 2012) (declining to certify the question

of whether a cross-commissioned tribal police officer is a "public employee" entitled to

defense and indemnification under the New Mexico Tort Claims Act, because the

question "can be answered both by appellate opinions of the New Mexico Supreme Court

and the New Mexico Court of Appeals.  The answer can be found in the plain language of

the NMTCA."); see also NMRA 12-607(a) (permitting certification only when the

"question is one for which answer is not provided by a controlling . . . appellate opinion

of the New Mexico Supreme Court *or the New Mexico Court of Appeals*" (emphasis

added)).

B.      *Motion to Dismiss*

        The County has moved to dismiss the *Amended Third-Party Complaint* on the

basis of sovereign immunity because, pursuant to the Court of Appeals' holding in Loya,

Defendants Romero and Garcia are not "public employees" as defined by the Act.  [Doc.

21]  In response, Defendants Romero and Garcia contend that Loya was wrongly decided

because the definitional sections of § 41-4-3(F) are separate and distinct and the failure to

satisfy one of the statutory definitions does not preclude an individual from satisfying

another.  [Doc. 54]  Defendants Romero and Garcia argue that "it makes sense from a

public policy perspective" to construe the Act in such a manner with respect to law

enforcement officers:

> because the risk that persons exercising law enforcement authority who are full-time (or 'certified' part-time) salaried law enforcement officers will commit intentional torts is lower as compared to persons exercising such authority without the same degree of training or experience or certification.  Likewise, the lines here drawn by the legislature—in distinguishing between intentional torts and negligence torts—likely rested on the expectation that on average the likelihood of severe (and costly) injuries that would result from intentional torts would tend to be greater than for the categories of negligence torts for which the TCA waives immunity.  §§ 41-4-5 to 41-4-11.  These differences explain why the statute protects all persons who meet the "public employee" definition of § 41-4-3F from personal liability per § 41-4-4 for torts or § 1983 violations they commit within the scope of their duty, but why the County is not liable to third parties (per § 41-4-4A and § 41-4-12) for intentional torts committed by "public employees" unless they also meet the special "law enforcement officer" definition at § 41-4-3D.

[Doc. 54 at 10]

To resolve the present motion to dismiss, the Court "must ascertain and apply

[New Mexico] law with the objective that the result obtained in the federal court should

be the result that would be reached in [a New Mexico] court."  Wood v. Eli Lilly & Co.,

38 F.3d 510, 512 (10th Cir. 1994).  "Absent a definitive ruling from a state's highest

court, we must predict the course that body would take if confronted with the issue."

Rancho Lobo, Ltd. v. Devargas, 303 F.3d 1195, 1202 n.2 (10th Cir. 2002) (internal

quotation marks and citation omitted).  "[A] decision from the New Mexico Court of

Appeals, an intermediate court in that state . . . . cannot be considered a controlling

decision from New Mexico's highest court, the New Mexico Supreme Court." Id. "Rather, [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that it is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id. (internal quotation marks and citations omitted).

The New Mexico Supreme Court has not yet ruled on the issue of whether a tribal law enforcement officer operating under a county cross-commissioning agreement is a "public employee" under the Act and, therefore, entitled to defense and indemnity by the county. However, as explained in detail above, the Court of Appeals held in Loya that a cross-commissioning agreement does not make a tribal police officer "a 'public employee of the County" and, therefore, the county "has no duty to defend [the officer] . . . or indemnify him for tortious acts committed under color of his commission." Loya, 319 P.3d at 662. Prior to Loya, in Williams v. Board of County Commissioners of San Juan County, 963 P.2d 522 (N.M. App. 1998), the Court of Appeals "held that the TCA's definition of 'public employee' under Section 41-4-3(F) and 'governmental entity' under Section 41-4-3(B) did not include a cross-deputized Navajo police officer who was sued after issuing a Navajo speeding ticket to a non-Indian on a state right of way through the Navajo Nation." Loya, 319 P.3d at 559 n.1. In Williams, the Court affirmed the dismissal of the plaintiff's tort claims under the Act because the Navajo police officer's "cross-deputization as a San Juan County sheriff did not, in itself, make him a public employee." Williams, 963 P.2d 528.

In Segura, the United States District Court for the District of New Mexico also considered whether a cross-deputized tribal police officer qualifies as a "public employee" under the Act. In that case, the defendants, a police officer employed by the Tesuque Pueblo and cross-deputized by Santa Fe County and the Board of County Commissioners of Santa Fe County, were sued for alleged violations of the New Mexico Tort Claims Act arising out of a traffic stop and arrest of the plaintiff, a non-Native American, for various violations of state law. Segura, 11cv926, Doc. 46 at 2. The plaintiff sought "to impose NMTCA supervisory liability on County Defendants under a theory of respondeat superior to require the County Defendants to answer for the alleged torts" of the cross-deputized police officer. Id. at 5. The Court held that the defendant officer was not a "law enforcement officer" as defined by the Act because he was not a salaried public employee of a governmental entity.[2] Id. at 7. The Court next considered whether the defendant officer was "acting on behalf of or in service of a governmental entity in any official capacity, with or without compensation" pursuant to § 41-4-3(F)(3).

The Court found that, because the defendant officer had arrested the non-Indian plaintiff for state criminal violations occurring on Indian land, he "was acting in his capacity as a Deputy Sheriff for the County of Santa Fe."[3] Id. at 8-9. Nonetheless, the

---

[2] The Court noted that "although the undisputed facts indicate that Defendant Colombe was a 'salaried' employee in that he was employed full-time as a police officer by the Pueblo of Tesuque Tribal Police Department, the Tribal Police Department does not meet the second criteria of being a 'governmental entity' within the meaning of the NMTCA." Segura, 11cv926, Doc. 46 at 7. Furthermore, "while the County Defendants meet the second criteria of being a 'governmental entity,' the undisputed facts show that the County Defendants paid no part of Defendant Colombe's salary or benefits rendering it impossible for Defendant Colombe to meet the first criteria of being a 'salaried public employee' of the Santa Fe County Sheriff's Department." Id.

[3] The Court found Williams, 963 P.2d at 524, to be distinguishable because in that case:

Court concluded that the defendant officer "was acting as an independent contractor and therefore is excluded from the Act's definition of 'public employee.'" Id. at 9.  In arriving at this conclusion, the Court noted that the right-to-control test and the factors enumerated in Celaya v. Hall, 85 P.3d 239, 243 (N.M. 2004) indicate that "the Santa Fe County Sheriff's Department did not exercise sufficient control over Defendant Colombe's activities to render the relationship one of an employer and an employee." Id. at 13; see Celaya, 85 P.3d at 243 (holding that, in addition to the right-to-control test, the court should also consider the following factors in determining whether an employer-employee relationship exists:  "1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business.").  Because the defendant officer was not a "public employee" as defined by the Act, the Court rendered summary judgment in favor of the County.

---

the tribal officer was not charging and prosecuting a non-Indian with a state crime, but rather was citing a non-Indian for violating tribal law.  See id. at 524. Here, in contrast, it is not the commission by the Santa Fe County Sheriff's Department alone that renders Defendant Colombe a public employee, but rather the fact that Defendant Colombe was acting pursuant to his authority as a Santa Fe County Deputy Sheriff when he charged and prosecuted Plaintiff for violation of the laws of the State of New Mexico.

Segura, 11cv926, Doc. 46 at 9 n.2.

The case law described above supports the Court of Appeals' decision in Loya that a cross-deputized tribal officer is not a "public employee" as defined by the Act. Nonetheless, Defendants Romero and Garcia contend that Loya was wrongly decided because the definitional sections of Section 41-4-3(F) are not mutually exclusive and public policy supports construing the Act to include a cross-deputized tribal officer who fails to meet the statutory definition of a "law enforcement officer."   [Doc. 54 at 10] They contend that "from a policy perspective" it makes sense to distinguish between salaried law enforcement officers employed by a governmental entity and other individuals exercising traditional law enforcement functions, because the risk that the former officers "will commit intentional torts is lower as compared to persons exercising such authority without the same degree of training or experience."  [Doc. 54 at 10] Defendants fail to cite any authority in support of the proposition that salaried law enforcement officers employed by a governmental entity are at a lower risk for committing intentional torts.  Even assuming, for the sake of argument, that such officers are at a lower risk for committing intentional torts, the Court fails to see why the Act would specifically exclude such intentional torts from coverage under § 41-4-12, but not exclude such torts from coverage when they are committed by other officers executing traditional law enforcement functions, especially when these other officers are at a higher risk for committing intentional torts.  Defendants Romero and Garcia also argue that the Act's distinction between "intentional torts and negligence torts . . . likely rested on the expectation that on average the likelihood of severe (and costly) injuries that would result from intentional torts would tend to be greater than for the categories of negligence torts

18

for which the TCA waives immunity."  [Doc. 54 at 10]  However, the Act only

distinguishes between the intentional torts enumerated in § 41-4-12 and negligence torts

for individuals who meet the statutory definition of a "law enforcement officer."  See §

41-4-12.  Under Defendants Romero's and Garcia's proposed construction of the Act, the

government would be required to defend and indemnify officers executing traditional law

enforcement functions, but who fail to meet the statutory definition of a "law

enforcement officer," even when such officers commit the intentional torts enumerated in

§ 41-4-12.  Given that these individuals are supposedly at a higher risk for committing

intentional torts, it seems that the likelihood of "severe (and costly) injuries" would be far

greater for this category of officers.  Therefore, the Court agrees with the Loya Court that

"reading the statute to say that a police officer who fails to meet the definition of a 'law

enforcement officer' under Section 41-4-3(D) can then allege that his same conduct falls

within another definition in order to trigger the duty to defend and indemnify is an

illogical distinction that makes no sense."  Loya, 319 P.3d at 661.

 Defendants Romero and Garcia also rely on Dunn v. State ex rel. Tax and

Revenue Department, 859 P.2d 469 (N.M. App. 1993), to support their construction of

the Act.  In Dunn, the plaintiff brought a § 1983 claim and New Mexico Tort Claim Act

claim against the State of New Mexico and Frank A. Mulholland, the former director of

the Motor Vehicle Division of the Taxation and Revenue Department.  Mulholland

argued that he was immune from suit under the Act, in relevant part, because "as the

Director of the Motor Vehicle Division, he was not a law enforcement officer within the

contemplation of Section 41-4-12."  Dunn, 859 P.2d at 472.  The Court of Appeals noted

that under the Motor Vehicle Code, Mulholland had the power to act as a "peace officer[]" for the purpose of enforcing the provisions of the Motor Vehicle Code [and] to make arrests upon view and without warrant for any violation . . . of the . . . Code." Id. (quoting NMSA 1978, § 66-2-12(A)(1)-(2) (Repl. Pamp. 1989)).  However, Mulholland submitted an affidavit averring that "his principle duties 'and the vast majority of my time and effort are involved in administrative matters,' not in acting as a law enforcement officer." Id.  Because Mulholland's principle duties did not involve "holding 'in custody [persons] accused of a criminal offense, [or] . . . maintain[ing] public order or . . . [making] arrests for crimes,'" consistent with § 41-4-3(D), the Court held that he was "not a law enforcement officer within the contemplation of Section 41-4-12." Id. Therefore, Mulholland was immune from liability under the Act. Id. at 476.

Defendants Romero and Garcia contend that "[t]he Dunn case makes clear that they, like Director Mulholland, are nonetheless 'public employees' entitled to the protections of the TCA," even though they do not satisfy the statutory definition of a law enforcement officer.  [Doc. 54 at 12]  However, Dunn is distinguishable from Loya and the present case.  Dunn did not consider whether "law enforcement officers acting within the scope of their police duties but who are not salaried employees of a governmental entity subject to the TCA," Loya, 319 P.3d at 661, nonetheless fall within a statutory definition of a "public employee."  Furthermore, Dunn did not consider the scope of the catchall provision in Section 41-4-3(F)(3), since the Director of the Motor Vehicle Department is appointed by the Governor and, therefore, is an "elected or appointed official[]" under Section 41-4-3(F)(1).  See NMSA 1978, § 9-11-5(A) (providing that the

secretary of the Taxation and Revenue Department "shall be appointed by the Governor"); NMSA 1978, § 66-1-4.4(F) (providing that the term "director" in the Motor Vehicle Code means "secretary"); NMSA 1978, § 66-1-4.16(F) (providing that the term "secretary" in the Motor Vehicle Code means "the secretary of taxation and revenue"). Accordingly, Defendants Romero's and Garcia's reliance upon Dunn is misplaced.

Defendants Romero and Garcia also rely on Scull v. State of New Mexico, 236 F.3d 588 (10th Cir. 2000) in support of their construction of the Act. In Scull, the plaintiff sued the County of Bernalillo, the City of Albuquerque, Tom Udall, the Attorney General of New Mexico, Anthony Tupler, an Assistant Attorney General of New Mexico, Robert Schwartz, the District Attorney for Bernalillo County, and Michael Sisneros, the Director of the Bernalillo County Detention Center for unlawful detention in violation of the Act. Id. at 591. The Tenth Circuit Court of Appeals noted that the immunity granted by the Act "does not apply to false imprisonment when caused by law enforcement officers while acting within the scope of their duties." Id. at 598 (citing § 41-4-12). Because "immunity principles [did] not resolve [the] issue," id. at 598-99, the Court proceeded to address the merits of the district court's grant of summary judgment in favor of the defendants.

In Scull, it appears to have been undisputed that the defendants were "law enforcement officers" as defined by the Act. See § 41-4-3(D). In contrast, in the present case, as in Loya, it is undisputed that the defendant cross-deputized tribal officers were *not* "law enforcement officers" as defined by the Act, even though they performed traditional law enforcement functions, and the dispositive issue is whether these officers

nonetheless fall within an alternative definition of a "public employee" under § 41-4-3(F).  Therefore, Scull does not assist the Court in construing the scope of the Act.

Lastly, Defendants rely on Celaya v. Hall, 135 N.M. 115, to support their proposed construction of the Act.  In Celaya, the defendant was an ordained minister and volunteer chaplain with the Bernalillo County Sheriff's Department.  Id. at 117.  The New Mexico Supreme Court observed that § 41-4-3(F)(3) expressly "includes volunteers in the TCA, presumably in recognition of the important contribution volunteers can provide through government service."  Id. at 118.  The Court noted that:

> In so designating uncompensated persons working on behalf of the government, the legislature took action to protect both the volunteer and the public.  The law protects the volunteer by providing immunity for an act not included within the TCA and by affording the volunteer indemnification and a defense when immunity has been waived.  See § 41-4-4. Either way, the TCA treats the volunteer the same as any other employee, thereby encouraging volunteer participation in government.  The TCA also protects the public by ensuring that government will be financially accountable when volunteers working within their scope of duty commit certain torts and injure innocent members of the public.

Id.  Although § 41-4-3(F)(3) applies to volunteers, it does not apply to independent contractors and the question before the Court was whether the defendant chaplain was an independent contractor or an employee of the governmental entity.  Id. at 118-19. Applying the right-to-control test and the factors enumerated in the Restatement (Second) of Agency § 220(2)(a-j), the Supreme Court concluded that the defendant chaplain was an employee of the Bernalillo County Sheriff's Department, rather than an independent contractor.  Id.

22

In Celaya, the defendant chaplain did not execute traditional law enforcement functions and, therefore, the Court did not address the issue of whether an officer who executes traditional law enforcement functions, but fails to meet the definition of a "law enforcement officer" under § 41-4-3(D), nonetheless may be considered a public employee under § 31-4-3(F)(3).  Therefore, the Court concludes that Celaya does not support Defendants Romero's and Garcia's proposed construction of the Act.

Defendants Romero and Garcia have failed to adduce any persuasive evidence that the New Mexico Supreme Court will not follow the reasoning of the Court of Appeals in Loya.  See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 957 (10th Cir. 2011) (noting that where "there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court would decide otherwise"). Accordingly, the Court concludes, pursuant to Loya, that Defendants Romero and Garcia are not "public employees" under the Act.  Therefore, the County's motion to dismiss the Amended Third-Party Complaint will be granted.[4]

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that the County's *Motion to Certify Question to Supreme Court of New Mexico* [Doc. 27] is **DENIED**;

**IT IS FURTHER ORDERED** that the County's *Motion to Dismiss Third-Party Complaint* [Doc. 21] is **GRANTED**.

---

[4] In light of this conclusion, the Court does not address whether Defendants Romero and Garcia are excluded from the scope of the Act because they are "independent contractors."

**SO ORDERED** this 3rd day of March, 2015, in Albuquerque, New Mexico.


_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge